No. 13201

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA ex rel THOMAS L. JUDGE,
Governor of the State of Montana,

Plaintiff,

-vs-

THE LEGISLATIVE FINANCE COMMITTEE AND ITS
MEMBERS, Francis Bardanouve, Chairman,
David Aageson, Glenn Jacobsen, Orin P. Kendall,
Arthur E. Lund, William L. Mathers, Jack K. Moore,
William J. Norman, Ann K. Regan, Miles Romney,
Ed B. Smith, and Stan Stephens,

Defendants.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Plaintiff:

Larry Elison argued and Patrick Melby argued,
Helena, Montana

For Defendants:

John Northey argued, Helena, Montana

---

Submitted: December 6, 1975

Decided: DEC 19 1975

Filed: DEC 19 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding brought by plaintiff Governor of Montana for declaratory relief pursuant to section 93-8901 et seq., R.C.M. 1947, involving the constitutionality of several legislative enactments establishing and empowering defendant Legislative Finance Committee and its office of Legislative Fiscal Analyst. This cause is a companion case to No. 13069, Board of Regents v. Thomas L. Judge, decided today.

Plaintiff (hereinafter called Governor) commenced this action October 29, 1975, with an application for leave to file a complaint stating that substantial questions of the constitutionality of these enactments existed and that the remedy available through trial in the district court was inadequate because the operation of these laws would impair and do irreparable harm to state government functions during the delay before final resolution of the matter by this Court. After an ex parte hearing on October 29, 1975, this Court granted the application and ordered that defendant (hereinafter called Finance Committee) answer the complaint, briefs be filed, and set the matter for an adversary hearing. Hearing was had.

Specifically this challenge involves three enactments of the Forty-fourth Legislature.

(1) Senate Bill No. 333, Chapter 448, Laws of Montana, 1975--The Legislative Finance Act--provides for the creation of the interim legislative finance committee whose membership is made up of four members of the senate finance committee, two members from the senate at large, four members of the house appropriation committee, and two members from the house at large. The act also creates the office of legislative fiscal analyst and specifies the duties of both the analyst and the committee.

(2) Senate Bill No. 401, Chapter 51, Laws of Montana,

1975, as set forth in the companion case, grants the legislative finance committee review and approval authority over budget amendments which are therein defined as expenditures by state agencies in excess of their appropriations.

(3) House Bill No. 1 (Special Session), Laws of Montana, 1975, specifically appropriates funds from sources other than the general fund which were not available for consideration by the legislature and modifies each of the appropriation bills of the forty-fourth legislature to insure that such funds are approved by the legislative finance committee in the form of a budget amendment before they are made available to the state agency for expenditure.

The Governor challenges the budget amendment authority in S.B. 401 and H.B. 1 (Special Session) of the Finance Committee by asserting in the alternative that either it is an unconstitutional delegation of legislative authority because it gives the Finance Committee authority to permit expenditures of money from the public treasury without an appropriation made by law, or an infringement on the doctrine of separation of powers because it allows the Finance Committee to exercise discretion exclusively reserved to the executive branch.

Additionally, the Governor argues if the Finance Committee is exercising administrative power, the legislature has conferred civil appointments upon members of the legislature who are ineligible for such appointment under Article V, Section 9, 1972 Montana Constitution. Section 7, S.B. 333 is void, argues the Governor, because it is an interference with the governor's constitutional duty to prepare and submit a budget to the legislature in Article VI, Section 9, 1972 Montana Constitution. The Governor also seeks to enjoin the Finance Committee from acting under the remainder of S.B. 333 to the extent duplication or

interference with the Governor's constitutional budget duties result.

The following sections of S.B. 333 indicate a possible duplication of function or interference with the executive:

"Section 6. There is a new R.C.M. section numbered 43-1114 that reads as follows:

"43-1114. Legislative fiscal analyst's duties. The legislative fiscal analyst shall: (1) provide for fiscal analysis of state government and accumulate, compile, analyze, and furnish such information bearing upon the financial matters of the state that is relevant to issues of policy and questions of statewide importance, including, but not limited to, <u>investigation and study of the possibilities of effecting economy and efficiency in state government;</u>

"(2) Estimate revenue from existing and proposed taxes;

"(3) Analyze the executive budget and budget requests of selected state agencies and institutions, including proposals for the construction of capital improvements;

"(4) <u>Make the reports and recommendations he deems desirable to the legislature</u> and make reports and recommendations as requested by the legislative finance committee and the legislature; and

"(5) Assist committees of the legislature, and individual legislators, in compiling and analyzing financial information.

"Section 7. There is a new R.C.M. section numbered 43-1115 that reads as follows:

"43-1115. Fiscal analysis information from state agencies. The legislative fiscal analyst has the authority to investigate and examine into the costs of state government activities and may examine the records, books, and files of any state agency, including confidential records of executive branch agencies. Every state agency shall furnish the legislative fiscal analyst with copies of all budget requests, at the time of submission to the budget director as provided by law, and if requested, all underlying and supporting documentation. In the year preceding each legislative session, the budget director shall furnish the legislative fiscal analyst on a confidential basis:

"(1) by December 1, a copy of the documents which reflect the anticipated receipts and other means of financing the budget for each fiscal year of the ensuing biennium;

"(2) by December 1, a preliminary budget which

shall meet the statutory requirements for submission of the budget to the legislature; and

"(3) by December 15, all amendments to the preliminary budget." (Emphasis supplied.)

The Finance Committee's answer raises four defenses which are the subject of a motion to dismiss. First, that the complaint fails to state a claim upon which relief can be granted. Second, the Finance Committee asserts that this Court should not invoke its original jurisdiction under Rule 17, Montana Rules of Appellate Civil Procedure, because no emergency situation exists. Third, there are factual matters in dispute requiring an evidentiary hearing in district court. Fourth, defendant Finance Committee asserts that plaintiff Governor should be estopped from challenging the acts in question because he signed them and subsequently did not legally challenge them when he had an opportunity to do so.

On the merits of the Governor's challenge the Finance Committee states that the establishment of the interim committee was a valid exercise of legislative power and the members of the committee serve in their capacity as legislators, not civil officers. It argues the interim committee performs an incidental legislative function by altering expenditure limitations established by the legislature during its biennial sessions. The legislature in H.B. 1 (Special Session) established a contingency according to the Finance Committee, which becomes effective when the Finance Committee determines the contingency has been met. The Finance Committee argues such contingent appropriations approved by the legislative finance committee under S.B. 401 constitute a valid delegation of authority.

With regard to the Governor's challenge to the fiscal analysis powers in S.B. 333, these duties do not violate the separation of powers clause of Article III, Section 1, 1972 Montana

Constitution, according to the Finance Committee. Specifically it argues Article VI, Section 9, 1972 Montana Constitution, confers a duty on the governor to submit a budget to the legislature, but this does not preclude the legislature from rejecting all or part of that budget and substituting one of its own. The Finance Committee submits that the information obtained by the powers given in S.B. 333 is merely ancillary to the legislature's duty to make an independent and responsible decision concerning appropriations.

Initially we consider the Finance Committee's motion to dismiss. The Governor opposes the motion on the basis that only legal issues are involved and during oral argument the Governor's counsel stated he was willing to concede any factual matters in question. We note at this point that because of the lack of facts presented, our opinion here is necessarily limited. The Governor maintains that each enactment is unconstitutional on its face. On the basis of the Governor's concession of factual issues and the fact that the answers required by this case will have such a significant impact on the operation of state government, (for example, this Court's decision in Board of Regents v. Thomas L. Judge, Cause No. 13069, also decided today) we deem this Court's original jurisdiction proper under Rule 17, Montana Rules of Appellate Civil Procedure.

We also find that a declaratory judgment concerning the legislative acts in question provides a proper resolution of this controversy. Board of Regents v. Thomas L. Judge, supra. Finally, we think the doctrine of estoppel is inapplicable here in view of the Governor's duty to uphold the Montana Constitution. The Finance Committee's motion to dismiss is denied.

Moving to the merits of the controversy, we first consider the budget amendment authority given the Finance Committee under

(Special Session)
S.B. 401 and H.B. 1/ Initially we find that the legislature in H.B. 1 (Special Session), Laws of Montana, 1975, did intend and did accomplish the appropriation of monies received from sources other than the general fund which were not available for consideration by the legislature. What remains is a categorization and constitutional evaluation of the function of that committee.

There can be no doubt that the legislature, sitting in session, could determine whether or not to release money already appropriated from/source other than the general fund and not available for consideration by an earlier session of that same legislature. Such a determination is an integral part of the final appropriation decision. The power to appropriate is a long established, well-recognized power of the legislature. State ex rel. Haynes v. District Court, 106 Mont. 470, 476, 78 P.2d 937 and cases cited therein. Further, these nongeneral fund monies are public operating funds of state government subject to the appropriation process. See companion opinion Board of Regents v. Thomas L. Judge, supra.

Alternatively the legislature might, as it has often done in other areas, make a policy determination and delegate to an executive agency or officer the duty to later implement the legislature's policy determination.

The legislature has the power to establish interim committees to gather information upon which the legislature can evaluate past actions or use as a basis for future decisions. Article V, Section 10, 1972 Montana Constitution; State ex rel. James v. Aronson, 132 Mont. 120, 314 P.2d 849; Transcript of Proceedings, Montana Constitutional Convention, (1972), pp. 1950, 1951.

But, the 1975 Montana Legislature in its enactment of S.B. 401 and H.B. 1 (Special session) empowering the Finance Committee to approve budget amendments delegated a power properly

- 7 -

exercisable only by either the entire legislature or an executive officer or agency, to one of its interm committees. Such a hybrid delegation does not pass constitutional muster. The power in question here resides in either the entire legislative body while in session or, if properly delegated, in an executive agency. Clearly the action of the Finance Committee does not constitute the action of the entire legislature. Article V, Section 11, 1972 Montana Constitution. Just as clear is the fact that Article V, Section 9, 1972 Montana Constitution, would disqualify these legislators from membership on the Finance Committee if it were an executive agency. Therefore those sections of S.B. 401 and H.B. 1 (Special Session) empowering the Finance Committee to approve budget amendments are declared invalid as unconstitutional delegations of legislative power.

This determination that S.B. 401, Chapter 510, Laws of Montana, 1975, is unconstitutional necessarily denies the Finance Committee any power over those requests enumerated in section 1 (3), H.B. 271, before us in the companion case Board of Regents v. Thomas L. Judge, supra. Since we have found the appropriation to have been made by the legislature, which both parties concede, the discretion regarding the disposition of these nongeneral fund unanticipated revenues resides within the executive branch.

Next we consider S.B. 333, which the Governor alleges to be an infringement on the executive branch and therefore violative of the separation of powers clause of Article III, Section 1, 1972 Montana Constitution.

This description from State v. Johnson, 75 Mont. 240, 249, 243 P. 1073, is the accepted discussion of separation of powers by this Court:

> "In theory, this section [Section 1, Article IV,
> 1889 Montana Constitution almost identical to
> Section 1, Article III, 1972 Montana Constitution]

* * * effects an absolute separation of the three departments of our government, 'but, while such is the theory of American constitutional government, it is no longer an accepted canon among political scientists; it has never been entirely true in practice.' (12 C.J. 803; Cooley on Constitutional Law, 44; Story on Constitution of the United States 525.)

" * * *

"That section 1, Article IV, does not wholly prevent the exercise of functions of a nature belonging to one department by those administering the affairs of another is recognized in State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 Pac. 392, wherein Mr. Justice Sanner, speaking for this court said: 'The separation of the government into three great departments does not mean that there shall be "no common link of connection, or dependence, the one upon the other in the slightest degree" (1 Story's Commentaries on the Constitution, sec. 525); it means that the powers properly belonging to one department shall not be exercised by either of the others. (Const. Art. IV, sec. 1.) There is no such thing as absolute independence.' He then cites numerous instances of the exercise of powers by one department which, from their nature, would seem to belong to another, but which are incidents to the proper discharge of the powers vesting in the department exercising them, or are reposed in the particular department as a matter of convenience in governmental affairs." (Emphasis supplied.)

Mr. Justice Brandeis in Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L ed 160, 242, stated:

"The doctrine of the separation of powers was adopted by the Convention of 1787 not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy." (Emphasis supplied.)

We also take note of the language of Mr. Justice Holmes in Springer v. Philippine Islands, 277 U.S. 189, 209, 48 S.Ct. 480, 72 L ed 845, 852:

"The great ordinances of the Constitution do not establish and divide fields of black and white. Even the more specific of them are found to terminate in a penumbra shading gradually from one extreme to the other. * * *" (Emphasis supplied.)

To what extent then does S.B. 333 violate the separation of powers in view of the command of Article VI, Section 9, 1972

- 9 -

Montana Constitution, for the governor to "submit to the legislature at a time fixed by law, a budget for the ensuing fiscal period setting forth in detail for all operating funds the proposed expenditures and estimated revenue of the state." Again, our determination here is limited to a consideration of S.B. 333 on its face, due to the concession of factual issues by the Governor.

Basic to the resolution of this issue is the fact that the budget in Montana is a legislative budget not an executive budget notwithstanding Article VI, Section 9. Article V and Article VIII, 1972 Montana Constitution, vest the power to approve appropriation bills and a budget in the legislative branch. Article V, Sections 1, 11; Article VIII, Sections 9, 12, 14, 1972 Montana Constitution. In other words the legislature has the power to adjust and finalize the budget. Given that power and responsibility the legislature through an interim committee may require such information from the other branches of government as is reasonably necessary to form a rational basis for its budget determinations.

The Governor's assertion that Section 7 of S.B. 333 infringes on the executive branch because it requires a disclosure of information held by state agencies, including a copy of the preliminary budget, is of little substance. Indeed, should the executive branch withhold from the legislature or one of its interim committees any information reasonably necessary for budget decisions, it in fact would be interferring with the legislature to the extent of violating the separation of powers doctrine. Once prepared the preliminary budget is arguably a public document and should be available not only to the Finance Committee but to the general public as well under Article II, Section 9, 1972 Montana Constitution.

While an apparent unnecessary duplication of effort in the preparation of two budgets and an apparent lack of cooperation may exist between the executive and the legislature in this matter, which results in a waste of taxpayers' money, these are insufficient grounds upon which to find a legislative enactment constitutionally invalid.

The rule that the constitutionality of an act of the legislature must be presumed unless rebutted by proof beyond a reasonable doubt is well established in Montana. State ex rel. Mills v. Dixon, 66 Mont. 76, 84, 213 P. 227. This presumption has not been overcome here; and thus we hold as to S.B. 333, specifically as to Section 7, the legislature has acted properly.

This opinion, together with the opinion in the companion case No. 13069, shall constitute a declaratory judgment.

_____Wesley Castles_____
                    Justice

We concur,

_____
Chief Justice

_____

_____

_____
Justices

- 11 -