No. 96-327

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JOHN COBB,

    Plaintiff and Respondent/Cross-Appellant,

v.

STATE OF MONTANA,

    Defendant and Appellant/Cross-Respondent.

FILED

SEP 26 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Joseph P. Mazurek, Attorney General, Kimberly A.
Kradolfer, Assistant Attorney General, Helena,
Montana; Garth Jacobson, Office of the Secretary of
State, Helena, Montana

    For Respondent:

        John Cobb, Augusta, Montana

Submitted on Briefs:  July 18, 1996

Decided:  September 26, 19

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant State of Montana (State) appeals the decision of the First Judicial District Court, Lewis and Clark County, enjoining the secretary of state from presenting to the electors an official ballot containing the legislative referendum known as Senate Bill 37, which sought to amend the Montana Constitution to eliminate the office of secretary of state. On July 18, 1996, this Court issued an order affirming the judgment of the District Court, a copy of which is appended. This opinion explains the reasons for that order.

The 1995 session of the Montana Legislature passed Senate Bill 37 as a referendum to be presented to the electorate during the November 1996 general election. The referendum sought to amend the Montana Constitution to eliminate the office of secretary of state. In its final form, the measure provided that all but three of the duties of the office of secretary of state were to be transferred to the Lieutenant Governor.. Two of the remaining duties would be transferred to other officials, due to legislative concern that assigning them to the Lieutenant Governor would concentrate too much power in the Governor's office.

However, one of the duties which is constitutionally assigned to the secretary of state was overlooked. Article IV, Section 7(3) of the Montana Constitution provides:

> If [an] election on an initiative or referendum properly qualifying for the ballot is declared invalid because the election was improperly conducted, the secretary of state shall submit the issue to the qualified electors at the

2

next regularly scheduled statewide election unless the legislature orders a special election.

Senate Bill 37 did not provide for the deletion of this section from the constitution, nor did it provide for the transfer of this particular duty to another office.

Following the passage of Senate Bill 37 by the legislature, Representative John Cobb filed suit to prevent the secretary of state from submitting the referendum to the electorate. Representative Cobb alleged that the injunction should be granted because the bill's title and statements of implication were unclear and misleading, and because the bill violated the one bill-one subject rule.

The District Court concluded that the formal title of the bill was not unclear or misleading. It further concluded that the bill did not violate the one bill-one subject rule. However, the District Court concluded that the statements of implication were misleading because they did not inform the voters that one duty of the secretary of state was not transferred anywhere, or that one reference to the secretary of state remained in the constitution. In addition, the District Court determined that the referendum was faulty because its passage would leave a defect in the constitution which could not be remedied except by another election.

The State appeals this decision, and Representative Cobb cross-appeals the District Court's determination that Senate Bill 37 is not constitutionally flawed in other respects. Because we affirm the District Court's determination that the bill is fatally flawed for the reason given, we need not consider whether it

3

contains other errors as well. We therefore will not consider the issues raised in the cross-appeal.

Section 3-5-302(6)(a), MCA, provides:

> [A] contest of a ballot issue submitted by initiative or referendum may be brought prior to the election only if it is filed within 30 days after the date on which the issue was certified to the governor, as provided in 13-27-308, and only for the following causes:
>    (i) violation of the law relating to qualifications for inclusion on the ballot;
>    (ii) constitutional defect in the substance of a proposed ballot issue; or
>    (iii) illegal petition signatures or an erroneous or fraudulent count or canvass of petition signatures.

Representative Cobb brought suit within the 30 days provided and alleged that the proposed ballot issue contains a substantive constitutional defect. The District Court agreed. On appeal, the State points out that pre-election challenges to initiatives or referenda are generally viewed with disfavor. It also argues that the defect complained of is not a substantive one, and, therefore, no pre-election judicial review is allowed under § 3-5-302(6)(a), MCA.

Judicial intervention in referenda or initiatives prior to an election is not encouraged. As this Court has noted,

> to effectively protect and preserve the right which Montanans have reserved to themselves to change the laws of this State through the initiative process, pre-election judicial review should not be routinely conducted.

State ex rel. Boese v. Waltermire (1986), 224 Mont. 230, 234, 730 P.2d 375, 378. The State contends that such judicial review is only proper where the initiative or referendum was not properly submitted under the election laws or where the initiative was

4

unconstitutional on its face. State ex rel. Montana Citizens for the Preservation of Citizens' Rights et al. v. Waltermire (1986), 224 Mont. 273, 276, 729 P.2d 1283, 1285. See also State ex rel. Montana School Board Association v. Waltermire (1986), 224 Mont. 296, 729 P.2d 1297; Boese, 730 P.2d 375. Here, improper submission of the bill was not alleged and is not an issue. Further, the District Court specifically concluded that Senate Bill 37 is not unconstitutional on its face. Under these circumstances, the State contends that pre-election judicial review is not appropriate.

Montana Citizens for the Preservation of Citizens' Rights and the other similar cases cited by the State are not strictly on point. All are cases where this Court was asked to assume original jurisdiction over a pre-election challenge, without the issue first being addressed by a district court. Here, the matter was presented to and decided by the District Court and comes before this Court on appeal. We therefore are not determining whether assumption of original jurisdiction is appropriate. Furthermore, these cases merely list the reasons for which we have exercised original jurisdiction and granted such petitions in the past; they in no way foreclose the ability of this Court to grant relief on other grounds should sufficient reason exist to do so. Beyond that, the State's argument ignores § 3-5-302(6)(a), MCA, which allows judicial review in cases involving a substantive constitutional defect, not just in cases where the measure is unconstitutional on its face. Representative Cobb alleged a

5

substantive constitutional defect in the referendum. While such pre-election challenges will be closely scrutinized, they are nevertheless permitted under the plain language of § 3-5-302(6)(a), MCA.

The State nevertheless argues that the District Court erred by enjoining the presentation of Senate Bill 37 to the electorate. The State contends that § 3-5-302(6)(a), MCA, is not applicable in this case because the defect complained of is not a substantive one.

Nothing in Senate Bill 37 as presented creates an obvious constitutional problem. The problem arises not from what was included but, rather, from what was omitted. The failure of the bill to address Article IV, Section 7(3), of the Montana Constitution or to dispose of the duty contained therein would leave an obvious defect in the constitution. The bill purports to abolish the office of secretary of state but leaves one duty assigned to that office, with no provision for who must assume that duty. The State contends that this is not a substantive constitutional defect because the legislature could define the term "secretary of state" as used in Article IV, Section 7(3) and reassign the duty. It further contends that the defect could also be cured by addressing it through another referendum at a later election. The existence of such remedies, it argues, means the defect is not one of substance but only of form. We disagree.

The difference between a defect of form and a defect of substance is not dictated by the ease or availability of a remedy.

6

As the State noted, a defect of form is "[a]n imperfection in the style, manner, arrangement, or non-essential parts of a legal instrument" while a defect of substance is "[a]n imperfection in the body or substantive part of a legal instrument" including "the omission of something which is essential to be set forth." Black's Law Dictionary (6th ed. 1991) at 419. We cannot construe the failure to remove a reference to and a duty of the office ostensibly abolished to be merely a problem of style or arrangement. Instead, it is exactly "the omission of something which is essential to be set forth."

Moreover, we are not persuaded that the hypothetical remedies presented would in fact solve the problem. The State argues that the legislature can define what is meant by the term "secretary of state" as used in the constitution. The State does not, however, explain how the legislature itself could do this. The constitution may only be amended by a vote of the people. Art. XIV, Sec. 8 and 9, Mont.Const. It is unclear how the State imagines the legislature could define a term in the constitution without first presenting the matter to the people, when, as here, the definition chosen would change the effect of the section in which the term is included. In any case, it would be a futile and inconsistent exercise to abolish the office of secretary of state and then go back and attempt to define that which has just been abolished.

The State further contends, however, that the defect could by cured by presenting another referendum to the people at a later election prior to the January 1, 2001, effective date of Senate

7

Bill 37. But this is not a guaranteed solution; if the electorate voted in favor of the first referendum but against the second, the constitutional defect would remain in place.

Affirmed.

_William E Hunter_
Justice

We Concur:

_____
Chief Justice

_Karla M Gray_
_____

_____

_W. William Leaphart_

_Jim Rieweiler_
Justices

Chief Justice J. A. Turnage, dissenting.

I respectfully dissent from the majority opinion. I dissented from the order of this Court on July 18, 1996, in this cause and stated that the District Court should be reversed.

The people should have been allowed to vote on the constitutional amendment referred to the people through Senate Bill 37, passed in the 1995 legislative session, the substance of which would have transferred the functions of the secretary of state to the lieutenant governor, thereby eliminating the office of the secretary of state.

The merits of this proposal are not at issue. The proposal's merits or lack of merits are matters to be decided by vote of the people. What is at issue is the right of the people to vote on a constitutional referendum--a right which the Court has denied in this matter.

In State ex rel. Harper v. Waltermire (1984), 213 Mont. 425, 691 P.2d 826, this Court declined to intervene in the referendum process where, as here, the challenge was not to a substantive defect in the text of the referendum.

Section 3-5-302(6)(ii), MCA, provides in pertinent part that "a contest of a ballot issue submitted by initiative or referendum may be brought prior to the election only . . . [for] constitutional defect in the substance of a proposed ballot issue." (Emphasis added.) Here, the defect which concerned the District Court is that one reference to a "secretary of state" will be left in Article IV, Section 7(3), of the Montana Constitution without

9

definition. This is not a substantive defect. To the extent that it constitutes a defect at all, it is a defect of form, and it is one which the legislature has the power to cure by providing an appropriate definition.

The only omission is the failure of the legislature to define what is meant by a "secretary of state" who will perform a particular ministerial function (i.e., submitting an issue to the qualified electors at the next designated election). That is not something which must essentially be defined within the body of the Constitution itself, particularly where, as here, Article IV, Section 3 of the Montana Constitution specifically gives the legislature the power to set requirements for the administration of elections. The legislature has the ability and authority to provide definition of the term "secretary of state" as it is used in that one provision.

Clearly, the defect in the referendum language is one of form and not one of substance. In failing to recognize this fundamental principle, the majority has denied the people the right to vote on an important constitutional referendum.

I would reverse the District Court.

_A. A. Turnage_
Chief Justice

10

September 26, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Joseph P. Mazurek, Attorney General
Kimberly A. Kradolfer, Assistant Attorney General
Justice Building
P.O. Box 201401
Helena, MT 59620-1401

Garth Jacobson, Esq.
Office of the Secretary of State
P.O. Box 202801
Helena, MT 59620-2801

John Cobb
Attorney at Law
P.O. Box 388
Augusta, MT 59410-0388

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy