DA 12-0358

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 211

MEA-MFT, the Montana State AFL-CIO, the Montana
Public Employees Association, the Montana Association
of Area Agencies on Aging, and the American Federation
of State, County and Municipal Employees, Montana Council 9,

        Plaintiffs, Appellees and Cross-Appellants,

    v.

LINDA McCULLOCH, Secretary of State for the State of Montana,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2011-961
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Steve Bullock, Montana Attorney General; Andrew I. Huff,
Assistant Attorney General, Helena, Montana

        For Appellees and Cross-Appellants:

            John M. Morrison, Frederick F. Sherwood; Morrison, Motl &
Sherwood, Helena, Montana

        Submitted on briefs and decision rendered:  August 10, 2012
           Opinion, analysis and rationale issued:  September 25, 2012

Filed:

_____
                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Secretary of State Linda McCulloch appeals from the District Court's Opinion and Order granting summary judgment to the plaintiffs and declaring Legislative Referendum 123 (LR-123) unconstitutional.  On August 10, 2012 this Court entered a summary order affirming the District Court, with an opinion to follow in due course.

¶2      McCulloch presents the following issues for review:

¶3      Issue One:  Whether the challenge to LR-123 is ripe and justiciable.

¶4      Issue Two:  Whether LR-123 is unconstitutional.

¶5      The plaintiffs, collectively referred to as the MEA-MFT, cross-appeal from the District Court's order dismissing Count 1 of the complaint.  MEA-MFT contend in the cross-appeal that LR-123 was an unconstitutional appropriation.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6      LR-123 was enacted by the Montana Legislature in 2011 as Senate Bill 426.  It proposed a vote in the November 2012 general election on whether to provide a tax credit and potential tax refund, or outright State payment, to individuals in years in which there is a certain level of projected surplus revenue.  LR-123 provides that if the unaudited ending State general fund balance exceeds 125% of the projected fund balance and this excess balance over 125% is at least $5 million, then a taxpayer could claim the tax credit as to taxes owed for the current year, and could receive a payment from the State if the credit exceeds tax liability and even if the individual had no tax liability.

¶7     The dispute in this case arises from the calculations required to determine whether the credit-refund threshold is reached.  While LR-123 assigns various duties to the Department of Administration, the primary dispute is over the role assigned to the Legislative Fiscal Analyst.  The Legislative Fiscal Analyst (LFA) is an individual employed by the Legislative Finance Committee and serves at its pleasure, § 5-12-205, MCA.  The Finance Committee is a permanent joint committee of the Montana Legislature, § 5-12-201, MCA.  Section 1(7)(a) of LR-123 requires the LFA to calculate a projected general fund balance by August 1 for the end of the current fiscal year.[1]  This calculation involves a projection to be determined by a consideration of anticipated revenues and transfers, the impacts of enacted legislation, anticipated supplemental appropriations and anticipated reversions.  The LFA is directed to calculate the projected general fund balance by adding the unassigned fund balance from the most recent completed fiscal year to the anticipated revenues and transfers, less the level of appropriations and transfers, supplemental appropriations and anticipated reversions for the most recent completed fiscal year. The constitutional issue in this case turns upon whether LR-123 impermissibly delegates legislative power to an employee (the LFA) of one of the Legislature's committees (the LFC).

¶8     MEA-MFT filed a complaint seeking declaratory and other relief, contending that LR-123 was unconstitutional because it proposed an appropriation and because it unlawfully delegated legislative powers.  McCulloch moved to dismiss and MEA-MFT moved for summary judgment.  The District Court granted the motion to dismiss as to

---

[1] The State fiscal year runs from July 1 to the following June 30.

3

one count of the complaint, holding that LR-123 did not provide for an appropriation. The District Court subsequently granted summary judgment to MEA-MFT, holding that LR-123 unconstitutionally delegated legislative power to the LFA.

¶9      A critical component of LR-123 is the requirement that the LFA determine the amount of the budgeted general fund balance. An affidavit by the LFA presented in the District Court proceedings sets out in detail the numerous separate steps, some involving other sub-steps, required to make this calculation. The calculation requires the LFA to project and anticipate fund balances, revenues, transfers, appropriations and reversions to arrive at a conclusion. That conclusion determines whether funds are paid into the State coffers or are paid out.

## STANDARD OF REVIEW

¶10     This Court reviews a district court's decision on summary judgment de novo, using the same standards of M. R. Civ. P. 56. *Reichert v. State*, 2012 MT 111, ¶ 18, 365 Mont. 92, 278 P.3d 455. This Court reviews a district court's interpretation of statutory language de novo, as a question of law, *Reichert*, ¶ 19, and we review issues of justiciability de novo, as a question of law, *Reichert*, ¶ 20.

## DISCUSSION

¶11     Issue One: Whether the challenge to LR-123 is justiciable and ripe.

¶12     McCulloch contends that the District Court erred by refusing to reject the action by MEA-MFT on the grounds that it was not ripe and therefore not justiciable. She contends that the issues raised in this action will not be ripe for decision unless and until the voters approve LR-123 in the November, 2012 election.

4

¶13 Montana courts have been reluctant to consider pre-election challenges to initiatives and referenda, guided by the principle that the initiative and referenda provisions of the Constitution should be broadly construed to maintain the power of the people. *Nicholson v. Cooney*, 265 Mont. 406, 411, 877 P.2d 486, 488 (1994); *Cobb v. State*, 278 Mont. 307, 310, 924 P.2d 268, 270 (1996); *Montana School Bds. Assoc. v. Waltermire*, 224 Mont. 296, 299, 729 P.2d 1297, 1298-1299 (1986). However, some pre-election challenges are specifically allowed by statute. *Montanans Opposed to I-166 v. State*, 2012 MT 168, 365 Mont. 520, ___ P.3d ___ (parts of the initiative process may be challenged under § 13-27-312, MCA).

¶14 This Court does not consider the constitutionality of a provision unless it is directly raised in litigation and a determination is necessary to the disposition of the case. *Potter v. Furnish*, 46 Mont. 391, 395, 128 P. 542, 543 (1912). And, when faced with a measure properly challenged as not properly submitted under the election laws, or as facially defective, this Court has often considered the substance of the challenge. *Sawyer Stores, Inc. v. Mitchell*, 103 Mont. 148, 62 P.2d 342 (1936) (vote on initiative enjoined because the form of the ballot was defective); *Burgan & Walker v. State*, 114 Mont. 459, 137 P. 663 (1943) (vote on legislative referendum enjoined because the measure was unconstitutional); *Steen v. Murray*, 144 Mont. 61, 394 P.2d 761 (1964) (vote on initiative enjoined because the measure was substantively unconstitutional); *Montana Citizens for the Preservation of Citizens' Rights v. Waltermire*, 224 Mont. 273, 729 P.2d 1283 (1986) (vote on initiative allowed to proceed after substantive analysis of the proposal); *Nicholson v. Cooney*, 265 Mont. 406, 877 P.2d 486 (1994) (vote allowed on referendum

5

after Court finds the measure to be constitutional); *Livingstone v. Murray*, 137 Mont. 557, 354 P.2d 552 (1960) (vote on legislative referendum enjoined because the measure was unconstitutional); *Harper v. Waltermire*, 213 Mont. 425, 691 P.2d 826 (1984) (election on constitutional initiative enjoined because the measure was unconstitutional); *Harper v. Greely*, 234 Mont. 259, 763 P.2d 650 (1988) (Court rejected a challenge to a legislative referendum that the form of the ballot was deficient, and allowed the election to proceed); *Cobb* (election on legislative referendum enjoined based upon substantive defect); *Reichert* (election on legislative referendum enjoined because it was unconstitutional); and *Montanans Opposed to I-166* (election allowed to proceed, form of ballot initiative not defective). In each of these cases the Court considered the substantive challenge to the measure under consideration, and did not decline to act on the ground that the issues were non-justiciable until after the election.

¶15 In the present case the MEA-MFT challenged the facial validity of LR-123 and requested injunctive and declaratory relief. This Court recently discussed the law of justiciability in this same context in *Reichert*, ¶¶ 53-60, concluding that the pre-election challenge to a referendum in that case was ripe and justiciable.

¶16 The requirement that courts decide only justiciable controversies derives from Article VII, Section 4 of the Montana Constitution, which confers original jurisdiction on district courts over "cases at law and in equity." Case law has established that this language is the functional equivalent of the requirement in Article III of the United States Constitution that courts exercise jurisdiction over a "case or controversy." *Plan Helena, Inc. v. Helena Regional Airport Auth.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567. A

6

justiciable controversy in this context is one in which the parties have existing and genuine rights or interests; the questions are presented in an adversary context; and the controversy is one upon which the court's judgment will effectively and conclusively operate. *Plan Helena*, ¶¶ 7-8.

¶17 A component of justiciability is ripeness—whether there is an actual, present controversy, and not merely a hypothetical or speculative issue. *Montana Power Co. v. PSC*, 2001 MT 102, ¶ 32, 305 Mont. 260, 26 P.3d 91. Ripeness has both a constitutional dimension based upon the case or controversy requirement, and a "prudential" dimension that weighs the fitness of the issues for judicial decision and the hardship to the parties of withholding a decision. *Reichert*, ¶ 56.

¶18 In the present case, as in *Reichert*, the issues are definite and concrete, not hypothetical and abstract. LR-123 would have a definite impact upon the State treasury and would require the LFA's predictions of surpluses and calculations of refunds and payments in August 2013. The parties have clearly articulated their positions on the issues and this Court has determined that LR-123 is constitutionally defective on its face. As in *Reichert*, allowing the defective referendum to proceed to election does nothing to protect voter rights. Placing a facially invalid measure on the ballot would be a waste of time and money for all involved, including State and local voting officials, the proponents and opponents of the measure, the voters, and the taxpayers who bear the expense of the election.

¶19    Therefore, it is clear that there is a present case or controversy as to LR-123 and there is no prudential reason for allowing the election on LR-123 to proceed prior to addressing the issues raised in this action.

¶20    Issue Two:  Whether LR-123 is unconstitutional.

¶21    Article III, section 1 of the Montana Constitution divides the government into legislative, executive and judicial branches, and provides that "[n]o person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."  Article V, section 1 of the Montana Constitution provides that the "legislative power is vested in a legislature consisting of a senate and a house of representatives."  Article VI, section 4 provides that the "executive power is vested in the governor who shall see that the laws are faithfully executed."

¶22    LR-123 delegates to the Legislative Fiscal Analyst, a staff person employed by a legislative committee, the power and duty to determine the projected general fund balance, which would involve two dozen separate steps or calculations, and requires discretionary projections of balances, revenues, transfers, appropriations and reversions. Based upon these calculations and projections, LR-123 empowers the LFA to determine whether money comes into the State treasury in taxes or is paid out in cash payments or refunds.  The District Court held that these were functions of either the Legislature itself, or of an Executive branch official acting under responsibilities properly delegated by the Legislature.  The District Court ruled that "LR-123 is unconstitutional as a violation of

8

the separation of powers envisioned by the Montana Constitution and as an unlawful delegation of the power of the Legislature."

¶23 This Court considered a similar issue in *Judge v. Legislative Finance Committee*, 168 Mont. 470, 543 P.2d 1317 (1975). In that case the Legislature enacted a provision requiring the Legislative Finance Committee to approve budget amendments to allow executive branch agencies to spend money from the State treasury that was not otherwise appropriated by the Legislature itself. This Court recognized that "[t]he power to appropriate is a long established, well-recognized power of the legislature" and that the "public operating funds of state government [are] subject to the appropriation process." *Judge*, 168 Mont. at 477, 543 P.2d at 1321.

¶24 Because of the public nature of the funds and the Legislature's role in the appropriation process, expenditure of funds to meet budget amendments could only be authorized by the entire Legislature while in session or through a duty properly delegated to an executive branch agency or officer. Since the Legislature had not appropriated the money itself and had not properly delegated that duty to an executive branch agency or officer, the budget amendment provision improperly delegated power to the Legislative Finance Committee. The "hybrid delegation" of authority to the Committee did not "pass constitutional muster." Action by the Legislative Finance Committee was not action by the Legislature, and neither was it action by the Executive branch. Therefore the provision was stricken as an unconstitutional delegation of legislative power.

¶25 The same considerations govern our analysis of LR-123. Here the authority to determine when State funds should be paid out is not delegated to the Legislative Finance

9

Committee, but to its individual agent, the Legislative Fiscal Analyst, who serves at the pleasure of the Committee, § 5-12-205(2), MCA. This delegation is therefore yet another step removed from the Legislature itself. If action by the Legislative Finance Committee did not constitute the exercise of the legislative power in the *Judge* case then clearly neither does action by the Committee's staff, the Legislative Fiscal Analyst.

¶26 The separation of governmental powers into equal branches is a fundamental precept of the American constitutional form of government. The drafters of the Montana Constitution, commenting on Article III, stated that "dividing the powers of government among three branches of state government is essential to any constitution." *Montana Constitutional Convention, Committee Reports*, February 19, 1972, p. 818. The separation of powers in the Montana Constitution is "designed to act as a check on an overly ambitious branch of government." *Montana Constitutional Convention, Committee Reports*, February 19, 1972, p. 818.

¶27 The District Court's discussion regarding separation of powers considered an act similar to LR-123 that was rejected by the United States Supreme Court. In *Bowsher v. Synar*, 478 U.S. 714, 106 S. Ct. 3181 (1986) the Court invalidated a law that required the Comptroller General to estimate federal revenues and expenditures and then specify the deductions in spending required to reach a balanced budget. The Comptroller General is an agent of Congress and the Court found that as such he could not exercise what the Court determined to be executive powers without running afoul of the constitutional requirement for a separation of the three branches of government.

> [W]e view these functions as plainly entailing execution of the law in constitutional terms. Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of "execution" of the law. Under § 251, the Comptroller General must exercise judgment concerning facts that affect the application of the Act. He must also interpret the provisions of the Act to determine precisely what budgetary calculations are required. Decisions of that kind are typically made by officers charged with executing a statute.

*Bowsher*, 478 U.S. at 732-733, 106 S. Ct. at 3191.

¶28 Likewise, in Montana each branch of government is equal, coordinate and independent, in that powers belonging to one branch may not be exercised by another. *Powder River County v. State*, 2002 MT 259, ¶ 112, 312 Mont. 198, 60 P.3d 357. The District Court found that under LR-123, as in *Bowsher*, the LFA would be required to exercise "independent judgment and evaluation" with respect to the numerous estimates and projections. We agree with the District Court that such judgment and interpretation of the Act are functions plainly entailing execution of the law and are thus consistent with executive branch functions that are routinely required to implement legislative enactments. The Executive branch is ultimately the responsibility of the Governor. *State Pub. Empl. Assoc. v. Governor*, 271 Mont. 450, 456-457, 898 P.2d 675, 679-680 (1995).

¶29 In this case the Legislative Fiscal Analyst is clearly an employee or agent of the Legislature, serving "at the pleasure" of the Legislative Finance Committee. Section 5-12-205(2), MCA. Under the separation of powers established in Article III, section 1 of the Montana Constitution, the Legislative Fiscal Analyst may not "exercise any power properly belonging" to the Executive or Judicial branches of government. It is the exclusive power of the Legislature to enact the laws of this State, and the exclusive power

11

of the Executive branch to implement and enforce those laws. Under Article VI, section 4 of the Montana Constitution it is the responsibility of the governor to see that the laws passed by the Legislature are properly executed.

¶30    For the reasons stated above, we have affirmed the decision of the District Court. LR-123 on its face violates both Article V, section 1 of the Montana Constitution as an unlawful delegation of legislative power, and Article III, section 1 of the Montana Constitution as a violation of the separation of powers of the independent branches of government.

¶31    Because we have affirmed the decision of the District Court, it is unnecessary to address the cross-appeal of the MEA-MFT.

¶32    LR-123 is unconstitutional on its face and therefore may not appear on the ballot in November 2012.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

Justice Beth Baker, dissenting.

¶33    I would conclude that the issues raised in the Plaintiffs' complaint are not ripe for resolution, and therefore would have reversed the District Court's June 5, 2012 Opinion

and Order.  I now dissent from this Court's ruling on Issue One of the appeal and would not reach Issue Two absent approval of LR-123 by a majority of voters casting ballots in the general election.

¶34    As I discussed in my dissent in *Reichert*, this Court generally determines the constitutionality of legislation "only if, and after, a duly-enacted law has been challenged."  *Reichert*, ¶ 93 (Baker, J., dissenting).  While the Court acknowledges that we use caution in entertaining pre-election challenges to ballot measures (Opinion, ¶ 13), its decision today marks the second time in the last four months—only the third since passage of the 1972 Constitution—that the Court has pre-empted a measure referred by the Legislature from reaching the ballot.[1]  Current statutes express "a clear preference" for deferring consideration of constitutional issues until and unless a ballot measure becomes law.  *Montanans Opposed to I-166*, ¶ 14 (Baker, J., concurring) (citing § 3-2-202(5), MCA (preserving "the right to challenge a ballot issue enacted by a vote of the people"), and § 13-27-316(6), MCA ("This section does not limit the right to challenge a constitutional defect in the substance of an issue approved by a vote of the people.")).  Deference is particularly warranted where a measure is referred by the Legislature, since it already has been through an extensive review process by legislative staff, public hearings, and deliberation by the legislative body.  *See Harper v. Greely*, 234 Mont. at 268, 763 P.2d at 656.  In my view, there is a strong case here for allowing the measure to go to the voters before addressing its alleged constitutional infirmities.

---

[1] The first was *Cobb v. State*, 278 Mont. at 309, 924 P.2d at 269, where we kept a legislatively-proposed constitutional amendment off the ballot because its approval by voters "would leave a defect in the constitution which could not be remedied *except by another election*." (Emphasis added.)

13

¶35    First, the Court's determination in *Reichert* to decide the constitutional issues prior to a vote on LR-119 turned on its conclusion that "the disenfranchisement will occur this election cycle" because the referendum would affect judicial offices that were on the very same ballot as the referendum.  *Reichert*, ¶ 58.  In contrast, LR-123 would not have taken effect until January 1, 2013, and affected no one's immediate interest.  Even under the principles of *Reichert*, this case is not the extraordinary one in which pre-election review should be granted.

¶36    In addition, as the Court observes, this case comes to us on the District Court's grant of summary judgment for the plaintiffs.  Opinion, ¶ 8.  The District Court denied their motion to dismiss on the separation of powers issue, concluding that the question was "more murky" and could not be determined on the face of the pleadings.  Only after considering the detailed affidavits of the Director of the Department of Revenue and the Principal Fiscal Analyst for the Legislative Fiscal Division did the District Court determine that LR-123 constituted an unconstitutional delegation of legislative authority.  Rather than a case of palpable facial invalidity,[2] determining LR-123's constitutionality impelled the District Court to consider evidence, including factual information such as potential forest fire expenditures and the Legislature's failure to adopt the LFA's revenue estimates in previous sessions.

¶37    "[T]he constitutional requirement of a 'case or controversy'" obligates the courts to refrain from issuing advisory opinions.  *Greater Missoula Area Fed'n of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d

---

[2] *State ex rel. Steen v. Murray*, 144 Mont. at 69, 394 P.2d at 765.

881. That the parties "have clearly articulated their positions" says nothing about whether the issues are either hypothetical or concrete. Opinion, ¶ 18. The Court's acknowledgment that the LFA's calculations would not be required until August 2013 undermines its conclusion that the issues require a decision before the 2012 election. Opinion, ¶ 18. The measure would "have a definite impact upon the State treasury" only if the voters approve it. If that were to occur, there would be plenty of time for this Court to consider and decide the constitutional issues before any action would be required by the new law.

¶38    It is ironic that the constitutional defect on which the Court's decision rests is the Legislature's violation of the principle of separation of powers. Opinion, ¶ 30. While the Court faults the Legislature for attempting to short-cut the constitutional process, it too is being unfaithful to that process by deciding the validity of a *proposed* law. I do not agree that voter rights are not at stake here. Much about the electoral process could be characterized as "a waste of time and money for all involved." Opinion, ¶ 18. Nonetheless, "[c]onvenience and efficiency are not the primary objectives -- or the hallmarks -- of democratic government . . . ." *Immig. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 944 (1983). It is the Court's unflagging obligation to protect the rights guaranteed by the Montana Constitution, including its provisions governing initiative and referendum. Efficiency should not outweigh the people's constitutionally prescribed right to vote on measures referred by the Legislature. *Reichert*, ¶ 99 (Baker, J., dissenting). The courts then should perform their constitutional duty to hear and decide challenges to laws that are duly enacted, even those the people have directly approved.

15

As the Supreme Court has observed, while governmental processes "often seem clumsy, inefficient, even unworkable . . . [,] [t]here is no support in the Constitution or decisions of this Court for the proposition that the cumbersomeness and delays often encountered in complying with explicit constitutional standards may be avoided, either by the Congress or by the President." *Chadha*, 462 U.S. at 959 (citation omitted).

¶39 The same holds true for the third branch of government. This Court should not start down the path of routinely granting pre-election review of legislative referenda, particularly where litigation timelines are so limited and comprehensive consideration of constitutional questions may be short-changed. In my opinion, we are "overly ambitious" in reaching the merits of this dispute.


/S/ BETH BAKER


Justice Jim Rice and Justice Patricia O. Cotter join in the dissenting Opinion of Justice Baker.

/S/ JIM RICE
/S/ PATRICIA COTTER


16