CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Secretary of State Linda McCulloch appeals from the District Court’s Opinion and Order granting summary judgment to the plaintiffs and declaring Legislative Referendum 123 (LR-123) unconstitutional. On August 10, 2012 this Court entered a summary order affirming the District Court, with an opinion to follow in due course.
¶2 McCulloch presents the following issues for review:
¶3 Issue One: Whether the challenge to LR-123 is ripe and justiciable.
¶4 Issue Two: Whether LR-123 is unconstitutional.
¶5 The plaintiffs, collectively referred to as the MEA-MFT, cross-appeal from the District Court’s order dismissing Count 1 of the complaint. MEA-MFT contend in the cross-appeal that LR-123 was an unconstitutional appropriation.
PROCEDURAL AND FACTUAL BACKGROUND
¶6 LR-123 was enacted by the Montana Legislature in 2011 as Senate Bill 426. It proposed a vote in the November 2012 general election on whether to provide a tax credit and potential tax refund, or outright State payment, to individuals in years in which there is a certain level of projected surplus revenue. LR-123 provides that if the *268 unaudited ending State general fund balance exceeds 125% of the projected fund balance and this excess balance over 125% is at least $5 million, then a taxpayer could claim the tax credit as to taxes owed for the current year, and could receive a payment from the State if the credit exceeds tax liability and even if the individual had no tax liability.
¶7 The dispute in this case arises from the calculations required to determine whether the credit-refund threshold is reached. While LR-123 assigns various duties to the Department of Administration, the primary dispute is over the role assigned to the Legislative Fiscal Analyst. The Legislative Fiscal Analyst (LFA) is an individual employed by the Legislative Finance Committee and serves at its pleasure, § 5-12-205, MCA. The Finance Committee is a permanent joint committee of the Montana Legislature, § 5-12-201, MCA. Section l(7)(a) of LR-123 requires the LFA to calculate a projected general fund balance by August 1 for the end of the current fiscal year.[1] This calculation involves a projection to be determined by a consideration of anticipated revenues and transfers, the impacts of enacted legislation, anticipated supplemental appropriations and anticipated reversions. The LFA is directed to calculate the projected general fund balance by adding the unassigned fund balance from the most recent completed fiscal year to the anticipated revenues and transfers, less the level of appropriations and transfers, supplemental appropriations and anticipated reversions for the most recent completed fiscal year. The constitutional issue in this case turns upon whether LR-123 impermissibly delegates legislative power to an employee (the LFA) of one of the Legislature’s committees (the LFC).
¶8 MEA-MFT filed a complaint seeking declaratory and other relief, contending that LR-123 was unconstitutional because it proposed an appropriation and because it unlawfully delegated legislative powers. McCulloch moved to dismiss and MEA-MFT moved for summary judgment. The District Court granted the motion to dismiss as to one count of the complaint, holding that LR-123 did not provide for an appropriation. The District Court subsequently granted summary judgment to MEA-MFT, holding that LR-123 unconstitutionally delegated legislative power to the LFA.
¶9 A critical component of LR-123 is the requirement that the LFA determine the amount of the budgeted general fund balance. An *269 affidavit by the LFA presented in the District Court proceedings sets out in detail the numerous separate steps, some involving other sub-steps, required to make this calculation. The calculation requires the LFA to project and anticipate fund balances, revenues, transfers, appropriations and reversions to arrive at a conclusion. That conclusion determines whether funds are paid into the State coffers or are paid out.
STANDARD OF REVIEW
¶10 This Court reviews a district court’s decision on summary judgment de novo, using the same standards of M. R. Civ. P. 56. Reichert v. State, 2012 MT 111, ¶ 18, 365 Mont. 92, 278 P.3d 455. This Court reviews a district court’s interpretation of statutory language de novo, as a question of law, Reichert, ¶ 19, and we review issues of justiciability de novo, as a question of law, Reichert, ¶ 20.
DISCUSSION
¶11 Issue One: Whether the challenge to LR-123 is justiciable and ripe.
¶12 McCulloch contends that the District Court erred by refusing to reject the action by MEA-MFT on the grounds that it was not ripe and therefore not justiciable. She contends that the issues raised in this action will not be ripe for decision unless and until the voters approve LR-123 in the November, 2012 election.
¶13 Montana courts have been reluctant to consider pre-election challenges to initiatives and referenda, guided by the principle that the initiative and referenda provisions of the Constitution should be broadly construed to maintain the power of the people. Nicholson v. Cooney, 265 Mont. 406, 411, 877 P.2d 486, 488 (1994); Cobb v. State, 278 Mont. 307, 310, 924 P.2d 268, 270 (1996); Montana School Bds. Assoc. v. Waltermire, 224 Mont. 296, 299, 729 P.2d 1297, 1298-1299 (1986). However, some pre-election challenges are specifically allowed by statute. Montanans Opposed to I-166 v. State, 2012 MT 168, 365 Mont. 520, 285 P.3d 435 (parts of the initiative process may be challenged under § 13-27-312, MCA).
¶14 This Court does not consider the constitutionality of a provision unless it is directly raised in litigation and a determination is necessary to the disposition of the case. Potter v. Furnish, 46 Mont. 391, 395, 128 P. 542, 543 (1912). And, when faced with a measure properly challenged as not properly submitted under the election laws, or as facially defective, this Court has often considered the substance *270 of the challenge. Sawyer Stores, Inc. v. Mitchell, 103 Mont. 148, 62 P.2d 342 (1936) (vote on initiative enjoined because the form of the ballot was defective); Burgan & Walker v. State, 114 Mont. 459, 137 P. 663 (1943) (vote on legislative referendum enjoined because the measure was unconstitutional); Steen v. Murray, 144 Mont. 61, 394 P.2d 761 (1964) (vote on initiative enjoined because the measure was substantively unconstitutional); Montana Citizens for the Preservation of Citizens’Rights v. Waltermire, 224 Mont. 273, 729 P.2d 1283 (1986) (vote on initiative allowed to proceed after substantive analysis of the proposal); Nicholson v. Cooney, 265 Mont. 406, 877 P.2d 486 (1994) (vote allowed on referendum after Court finds the measure to be constitutional); Livingstone v. Murray, 137 Mont. 557, 354 P.2d 552 (1960) (vote on legislative referendum enjoined because the measure was unconstitutional); Harper v. Waltermire, 213 Mont. 425, 691 P.2d 826 (1984) (election on constitutional initiative enjoined because the measure was unconstitutional); Harper v. Greely, 234 Mont. 259, 763 P.2d 650 (1988) (Court rejected a challenge to a legislative referendum that the form of the ballot was deficient, and allowed the election to proceed); Cobb (election on legislative referendum enjoined based upon substantive defect); Reichert (election on legislative referendum enjoined because it was unconstitutional); and Montanans Opposed to 1-166 (election allowed to proceed, form of ballot initiative not defective). In each of these cases the Court considered the substantive challenge to the measure under consideration, and did not decline to act on the ground that the issues were non-justiciable until after the election.
¶15 In the present case the MEA-MFT challenged the facial validity of LR-123 and requested injunctive and declaratory relief. This Court recently discussed the law of justiciability in this same context in Reichert, ¶¶ 53-60, concluding that the pre-election challenge to a referendum in that case was ripe and justiciable.
¶16 The requirement that courts decide only justiciable controversies derives from Article VII, Section 4 of the Montana Constitution, which confers original jurisdiction on district courts over “cases at law and in equity.” Case law has established that this language is the functional equivalent of the requirement in Article III of the United States Constitution that courts exercise jurisdiction over a “case or controversy.” Plan Helena, Inc. v. Helena Regional Airport Auth., 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567. A justiciable controversy in this context is one in which the parties have existing and genuine rights or interests; the questions are presented in an adversary *271 context; and the controversy is one upon which the court’s judgment will effectively and conclusively operate. Plan Helena, ¶¶ 7-8.
¶17 A component of justiciability is ripeness-whether there is an actual, present controversy, and not merely a hypothetical or speculative issue. Montana Power Co. v. PSC, 2001 MT 102, ¶ 32, 305 Mont. 260, 26 P.3d 91. Ripeness has both a constitutional dimension based upon the case or controversy requirement, and a “prudential” dimension that weighs the fitness of the issues for judicial decision and the hardship to the parties of withholding a decision. Reichert, ¶ 56. ¶18 In the present case, as in Reichert, the issues are definite and concrete, not hypothetical and abstract. LR-123 would have a definite impact upon the State treasury and would require the LFA’s predictions of surpluses and calculations of refunds and payments in August 2013. The parties have clearly articulated their positions on the issues and this Court has determined that LR-123 is constitutionally defective on its face. As in Reichert, allowing the defective referendum to proceed to election does nothing to protect voter rights. Placing a facially invalid measure on the ballot would be a waste of time and money for all involved, including State and local voting officials, the proponents and opponents of the measure, the voters, and the taxpayers who bear the expense of the election.
¶19 Therefore, it is clear that there is a present case or controversy as to LR-123 and there is no prudential reason for allowing the election on LR-123 to proceed prior to addressing the issues raised in this action.
¶20 Issue Two: Whether LR-123 is unconstitutional.
¶21 Article III, section 1 of the Montana Constitution divides the government into legislative, executive and judicial branches, and provides that “[n]o person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.” Article V, section 1 of the Montana Constitution provides that the “legislative power is vested in a legislature consisting of a senate and a house of representatives.” Article VI, section 4 provides that the “executive power is vested in the governor who shall see that the laws are faithfully executed.”
¶22 LR-123 delegates to the Legislative Fiscal Analyst, a staff person employed by a legislative committee, the power and duty to determine the projected general fund balance, which would involve two dozen separate steps or calculations, and requires discretionary projections of balances, revenues, transfers, appropriations and reversions. Based *272 upon these calculations and projections, LR-123 empowers the LFAto determine whether money comes into the State treasury in taxes or is paid out in cash payments or refunds. The District Court held that these were functions of either the Legislature itself, or of an Executive branch official acting under responsibilities properly delegated by the Legislature. The District Court ruled that “LR-123 is unconstitutional as a violation of the separation of powers envisioned by the Montana Constitution and as an unlawful delegation of the power of the Legislature.”
¶23 This Court considered a similar issue in Judge v. Legislative Finance Committee, 168 Mont. 470, 543 P.2d 1317 (1975). In that case the Legislature enacted a provision requiring the Legislative Finance Committee to approve budget amendments to allow executive branch agencies to spend money from the State treasury that was not otherwise appropriated by the Legislature itself. This Court recognized that “[t]he power to appropriate is a long established, well-recognized power of the legislature” and that the “public operating funds of state government [are] subject to the appropriation process.” Judge, 168 Mont. at 477, 543 P.2d at 1321.
¶24 Because of the public nature of the funds and the Legislature’s role in the appropriation process, expenditure of funds to meet budget amendments could only be authorized by the entire Legislature while in session or through a duty properly delegated to an executive branch agency or officer. Since the Legislature had not appropriated the money itself and had not properly delegated that duty to an executive branch agency or officer, the budget amendment provision improperly delegated power to the Legislative Finance Committee. The “hybrid delegation” of authority to the Committee did not “pass constitutional muster.” Action by the Legislative Finance Committee was not action by the Legislature, and neither was it action by the Executive branch. Therefore the provision was stricken as an unconstitutional delegation of legislative power.
¶25 The same considerations govern our analysis of LR-123. Here the authority to determine when State funds should be paid out is not delegated to the Legislative Finance Committee, but to its individual agent, the Legislative Fiscal Analyst, who serves at the pleasure of the Committee, § 5-12-205(2), MCA. This delegation is therefore yet another step removed from the Legislature itself. If action by the Legislative Finance Committee did not constitute the exercise of the legislative power in the Judge case then clearly neither does action by the Committee’s staff, the Legislative Fiscal Analyst.
*273 ¶26 The separation of governmental powers into equal branches is a fundamental precept of the American constitutional form of government. The drafters of the Montana Constitution, commenting on Article III, stated that “dividing the powers of government among three branches of state government is essential to any constitution.” Montana Constitutional Convention, Committee Reports, February 19, 1972, p. 818. The separation of powers in the Montana Constitution is “designed to act as a check on an overly ambitious branch of government.” Montana Constitutional Convention, Committee Reports, February 19, 1972, p. 818.
¶27 The District Court’s discussion regarding separation of powers considered an act similar to LR-123 that was rejected by the United States Supreme Court. In Bowsher v. Synar, 478 U.S. 714, 106 S. Ct. 3181 (1986) the Court invalidated a law that required the Comptroller General to estimate federal revenues and expenditures and then specify the deductions in spending required to reach a balanced budget. The Comptroller General is an agent of Congress and the Court found that as such he could not exercise what the Court determined to be executive powers without running afoul of the constitutional requirement for a separation of the three branches of government.
[W]e view these functions as plainly entailing execution of the law in constitutional terms. Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of “execution” of the law. Under § 251, the Comptroller General must exercise judgment concerning facts that affect the application of the Act. He must also interpret the provisions of the Act to determine precisely what budgetary calculations are required. Decisions of that kind are typically made by officers charged with executing a statute.
Bowsher, 478 U.S. at 732-733, 106 S. Ct. at 3191.
¶28 Likewise, in Montana each branch of government is equal, coordinate and independent, in that powers belonging to one branch may not be exercised by another. Powder River County v. State, 2002 MT 259, ¶ 112, 312 Mont. 198, 60 P.3d 357. The District Court found that under LR-123, as in Bowsher, the LFA would be required to exercise “independent judgment and evaluation” with respect to the numerous estimates and projections. We agree with the District Court that such judgment and interpretation of the Act are functions plainly entailing execution of the law and are thus consistent with executive branch functions that are routinely required to implement legislative *274 enactments. The Executive branch is ultimately the responsibility of the Governor. State Pub. Empl. Assoc. v. Governor, 271 Mont. 450, 456-457, 898 P.2d 675, 679-680 (1995).
¶29 In this case the Legislative Fiscal Analyst is clearly an employee or agent of the Legislature, serving “at the pleasure” of the Legislative Finance Committee. Section 5-12-205(2), MCA. Under the separation of powers established in Article III, section 1 of the Montana Constitution, the Legislative Fiscal Analyst may not “exercise any power properly belonging” to the Executive or Judicial branches of government. It is the exclusive power of the Legislature to enact the laws of this State, and the exclusive power of the Executive branch to implement and enforce those laws. Under Article VI, section 4 of the Montana Constitution it is the responsibility of the governor to see that the laws passed by the Legislature are properly executed.
¶30 For the reasons stated above, we have affirmed the decision of the District Court. LR-123 on its face violates both Article V, section 1 of the Montana Constitution as an unlawful delegation of legislative power, and Article III, section 1 of the Montana Constitution as a violation of the separation of powers of the independent branches of government.
¶31 Because we have affirmed the decision of the District Court, it is unnecessary to address the cross-appeal of the MEA-MFT.
¶32 LR-123 is unconstitutional on its face and therefore may not appear on the ballot in November 2012.
JUSTICES NELSON, WHEAT and MORRIS concur.

 The State fiscal year runs from July 1, to the following June 30.