No. 86-411

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA, ex rel., MONTANA
SCHOOL BOARD ASSOCIATION, MONTANA
ASSOCIATION OF COUNTIES, MONTANA
LEAGUE OF CITIES AND TOWNS, MUSSEL-
SHELL COUNTY, CUSTER COUNTY, CHOUTEAU
COUNTY, YELLOWSTONE COUNTY, BUTTE-
SILVER BOW LOCAL GOVERNMENT, CHARLES
L. EVANS, and MICHAEL S. BECKER,

        Plaintiffs and Relators,

    -vs-

JIM WALTERMIRE, Secretary of State of
the State of Montana,

        Defendant and Respondent,
    and

FRIENDS OF THE CONSTITUTION, INC.,

        Real Party in Interest.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Petitioner/Relator:

        Charles E. Erdmann argued, Helena, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        H. Elwood English argued for Secretary of State,
        Helena, Montana

    For Real Party in Interest:

        Carter Picotte argued for Friends of the Consitution,
        Helena, Montana

    For Amicus Curiae:

    David Gliko, City Attorney, Great Falls, Montana
    Roger Tippy for Montana Legal Defense Fund, Helena, Montana

                Submitted: October 7, 1986
                 Decided: December 11, 1986

Filed:    DEC 11 1986

                      *Ethel M. Harrison*
                            Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

In an application to this Court for a writ of injunction and declaratory judgment, plaintiffs and relators challenged the constitutionality of Constitutional Initiative 27, the "property tax initiative." On October 7, 1986, this Court issued an order denying the requested relief (copy of order attached to this opinion). This opinion sets forth the Court's reasoning.

The issues are:

1. Is the Initiative invalid on its face as a violation of the Contract Clause of the U.S. Constitution?

2. Does the Initiative present more than one amendment in a single ballot measure in violation of Mont. Const. Art. XIV, § 11?

3. Does the Initiative present irreconcilable conflicts with Mont. Const. Art. VIII, § 2, and Mont. Const. Art. III, § 7?

Constitutional Initiative 27 was certified to the Governor as officially filed on June 27, 1986. The Initiative would amend Montana's Constitution by adding a new section to Article VIII as follows:

> Section 15. Certain taxes prohibited--certain tax changes only by referendum or initiative. No tax shall be imposed on any real or personal property. The establishment of a sales tax, or the increase of sales tax or personal income tax shall be accomplished only by referendum of the legislature with the approval of a majority of the qualified electors or initiative of the people.

It would also repeal several sections of the Montana Constitution: Art. VIII, §§ 3, 4, and 5, and Art. XII, § 1(2).

On September 3, 1986, plaintiffs and relators filed an application for an original proceeding in this Court pursuant

to Rule 17 of the Montana Rules of Appellate Civil Procedure, asking that CI-27 be declared unconstitutional on its face under the Uniform Declaratory Judgment Act. They requested that the Secretary of State be enjoined from presenting CI-27 to the voters. They filed a brief in support of their application.

This Court ordered that all named parties submit briefs, reserving decision on whether it would accept jurisdiction of plaintiffs' application. After all briefs were filed, oral arguments were heard. This Court then issued its order denying the application for a writ of injunction and declaratory judgment.

I

Is the Initiative invalid on its face as a violation of the Contract Clause of the U.S. Constitution?

Article I, Section 10 of the United States Constitution provides that no state shall pass a law impairing the obligation of contracts. Plaintiffs contend that the Initiative would impair bond contracts already issued by Montana cities, counties, and school districts by repealing the statutes which provide for the method of repayment of bonds. The defendants counter that there is no impaired contract now before this Court and that other sources could be arranged for repayment of the bonds prior to the July 1987 effective date of the Initiative.

The peoples' right to alter or abolish our state constitution and form of government whenever they deem it necessary was present in our 1889 Constitution and remains substantially unchanged today at Mont. Const. Art. II, § 2. Under the 1889 Constitution, the people had the right to make statutory changes by initiative. In opinions decided under that

3

provision, this Court accepted jurisdiction over pre-election initiative challenges only where the challenged initiative was not properly submitted under the election laws, e.g., State ex rel. Livingston v. Murray (1960), 137 Mont. 557, 354 P.2d 552, and where the challenged initiative was unconstitutional on its face, e.g., State ex rel. Steen v. Murray (1964), 144 Mont. 61, 394 P.2d 761. The right of the people to make statutory changes by initiative is retained in Art. III, § 4 of our 1972 Constitution. The people also have the right under Art. XIV, § 9 of our 1972 Constitution to make constitutional changes by initiative:

> Amendment by initiative. (1) The people may also propose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least ten percent of the qualified electors of the state. That number shall include at least ten percent of the qualified electors in each of two-fifths of the legislative districts.
> (2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each month for two months previous to the next regular state-wide election.
> (3) At that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection. If approved by a majority voting thereon, it shall become a part of the constitution effective the first day of July following its approval, unless the amendment provides otherwise.

This right of the people to amend the Constitution by initiative is a unique and important retained power. The inclusion of this right in the 1972 Constitution emphasizes the degree of control the people desired to retain over the changes in their Constitution. We conclude that it is not the function of this Court to intervene in the initiative process prior to the peoples' vote absent extraordinary cause, and that our

4

discretionary jurisdiction under Rule 17, M.R.App.Civ.P., should not be exercised unless it is absolutely essential.

The impairment of contract challenge does not suggest that the Initiative is unconstitutional on its face as was the initiative in Steen. In substance, it is a contention that the Initiative would be unconstitutional as applied to bonds and other obligations already issued by cities, towns, school districts, and other parts of state government. The record before us does not contain any bonds or other obligations which are alleged to have been unconstitutionally affected. If the Initiative were adopted by the people, there would be an adequate opportunity to present this issue in the court system and determine if the impairment of contract challenge in fact does apply to obligations in existence. We do not find the type of compelling requirement necessary to move our discretion in this manner. We therefore declined to accept jurisdiction of this issue prior to the election.

II

Does the Initiative present more than one amendment in a single ballot measure in violation of Mont. Const. Art. XIV, § 11?

Plaintiffs and relators say that the Initiative addresses several distinct subjects, including property taxes, sales taxes, and S.I.D.'s. They argue that this violates Mont. Const. Art. XIV, § 11: "If more than one amendment is submitted at the same election, each shall be so prepared and distinguished that it can be voted upon separately."

As we stated under Issue I, this Court has exercised pre-election jurisdiction to remove an initiative from the ballot only when there was a procedural defect or when the

5

initiative was clearly unconstitutional on its face. The _Steen_ case involved the latter reason. There, the text of the proposed initiative clearly and directly contradicted a constitutional provision prohibiting the legislature from authorizing gambling. In the present case, in contrast, there are strong arguments on both sides of the issue of whether the Initiative violates the constitutional requirement that initiatives must address only one subject. Such a close issue deserves the considered judgment of this Court and is inappropriate for the hurried consideration requested in the present pre-election determination of constitutionality. We concluded that to pull this Initiative off the ballot while we considered this aspect more carefully would be an unjustified infringement on the people's right of initiative. Additionally, this issue could have been addressed following the election, had the Initiative been adopted. _See_, e.g., State ex rel. Corry v. Cooney et al. (1924), 70 Mont. 355, 225 P. 1007; State ex rel. Hay v. Alderson (1914), 49 Mont. 387, 142 P. 210; State v. Board of Com'rs. (1906), 34 Mont. 426, 87 P. 450. We therefore declined to exercise our discretionary jurisdiction over this issue prior to the election.

### III

Does the Initiative present irreconcilable conflicts with Mont. Const. Art. VIII, § 2, and Mont. Const. Art. III, § 7?

Plaintiffs and relators maintain that the portion of the Initiative which prohibits property taxes conflicts with Mont. Const. Art. VIII, § 2, which states "[t]he power to tax shall never be surrendered, suspended, or contracted away." They also argue that allowing sales or personal income taxes

6

to be established or increased only after approval by a majority of the qualified electors would require a supermajority for passage of such measures, because Mont. Const. Art. III, § 7, defines the number of qualified electors as the number of voters in the previous gubernatorial election. Plaintiffs assert that if the Initiative passed, a majority of the number of voters in the previous gubernatorial election would have to approve proposed sales or personal income taxes. Plaintiffs state that this would conflict with Mont. Const. Art. II, § 2, which they say implies that a majority of the voters will prevail.

Plaintiffs contended that this Court should strike the Initiative from the November ballot because of these conflicts. We declined to do so. No constitutional conflict would exist until and unless the Initiative was enacted into law by popular vote in November. Even then, the time period until July 1, 1987, would remain in which to raise objections to the Initiative before it took effect as law. At that time, any unconstitutional portions of the Initiative could be severed. These factors, along with our firm conviction of the value and importance of the right of initiative which is retained by the people of Montana, led us to conclude that the interests of our state would best be served, and the role of this Court best fulfilled, if the Court did not intervene prior to the election.

_____
Justice

We Concur:

_____
         Chief Justice

_____

_____

_____

_____

_____
            Justices

8

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 86-411

STATE OF MONTANA ex rel. MONTANA
SCHOOL BOARD ASSOCIATION, MONTANA
ASSOCIATION OF COUNTIES, MONTANA
LEAGUE OF CITIES and TOWNS,
MUSSELSHELL COUNTY, CUSTER COUNTY,
CHOUTEAU COUNTY, YELLOWSTONE COUNTY,
BUTTE-SILVER BOW LOCAL GOVERNMENT,
CHARLES L. EVANS, and MICHAEL S.
BECKER,

          Plaintiffs and Relators, .

  -v-

JIM WALTERMIRE, Secretary of State
of the State of Montana,

          Defendant and Respondent,

FRIENDS OF THE CONSTITUTION, INC.,

          Real Party in Interest.

ORDER

Plaintiffs and Relators have filed an original proceeding in this Court for Writ of Injunction and Declaratory Judgment, in which they challenge the constitutionality of Constitutional Initiative 27, which in part is entitled as an initiative to amend the Montana Constitution to abolish taxes on real and personal property. Briefs, motions, and other materials have been filed by Plaintiffs and Relators, Defendants and Respondents, and Real Party in Interest. Oral argument was held before the Court on this date. The Court has concluded it is advisable to immediately issue its Order to inform all parties of the result.

1

IT IS ORDERED:

(1) That the Application for Writ of Injunction and Declaratory Judgment is denied in its entirety, without prejudice to consideration of the issues in other proceedings.

(2) That an opinion of this Court will be issued at a later date setting forth the basis for this Order.

DATED this 7th day of October, 1986.

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

Special concurrence by Mr. Justice John C. Sheehy, Mr. Justice William E. Hunt, Sr., and Mr. Frank B. Morrison, Jr.:

We have voted today, with reservations, that this Court should allow CI-27 to remain on the statewide ballot in the general election of 1986.

Our reservations are that: (1) CI-27 does indeed violate the Contract Clause of the United States Constitution (Art. I, § 10) and of the 1972 Montana Constitution (Art. II, § 31); (2) does create an unreconcilable conflict with Art. VIII, § 2 and with Art. III, § 7, of the 1972 Montana Constitution; and, (3) is duplicitous and even triplicitous in the number of subjects submitted in one initiative.

Why would we allow it at all in the face of such substantive defects? First, because time remains after the general election and before the effective date if CI-27 passes, for the legislature and this Court to take curative actions. For example, this Court could hold the initiative unconstitutional as to contracts impaired; or we could hold that special assessments are not a form of taxation at all, but charges levied for benefits bestowed. Likewise, we can still decide, if CI-27 passes, the irreconcilable issues before the effective date. The legislature itself may adopt a plan acceptable to the voters by referendum before the effective date.

Our second reason is not legal but practical. CI-27 is not so much a fatal disease as it is a symptom that somthing is ailing in the Montana body politic. While the economy has stagnated or receded in most areas of Montana, the ever-galling property tax load has increased out of

- 3 -

proportion to the local economies. There would be no gain here to record the reasons, most of which lie directly at the legislature's door, some of which accrue from the bloated administrations of school districts, counties and towns, and one of which is the curtailment of the federal largesse. Not the least pain in our political body is the miserable mismanagement by the state of the 5-year revaluation program, which has brought thousands of property owners to their courthouse doors demanding relief.

The 55,000 signers of petition for CI-27, and their ranks of supporters, are saying out loud that property taxes in Montana have become regressive. Since all taxes, regardless of their names, are paid out of our incomes, a growth in taxation which is not accompanied by a growth in our incomes necessarily becomes strangular. Some Montanans feel a hand at their throats. They see CI-27 as a means to escape the strangle-hold. They are as entitled to express their outrage at the ballot box against taxation as against candidates. Whether they are right can be decided later, if CI-27 passes.

We therefore concur.

_____
Justice John C. Sheehy

_____
Justice William E. Hunt, Sr.

_____
Justice Frank B. Morrison, Jr.

- 4 -