FILED

03/15/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 22-0076

OP 22-0076

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 49

COTTONWOOD ENVIRONMENTAL LAW CENTER,
GALLATIN WILDLIFE ASSOCIATION,
JOHN PHILLIP MEYER, AND MONTANA RIVERS,

        Petitioners,

  v.

AUSTIN KNUDSEN, IN HIS CAPACITY AS
MONTANA ATTORNEY GENERAL,

        Respondent.

ORIGINAL PROCEEDING:     Ballot Initiative 24

COUNSEL OF RECORD:

        For Petitioners:

                John Meyer, Cottonwood Environmental Law Center, Bozeman, Montana

        For Respondent:

                Austin Knudsen, Montana Attorney General, Kristin Hansen, Lieutenant General, David M.S. Dewhirst, Solicitor General, Derek Oestreicher, General Counsel, Helena, Montana

                Emily Jones, Special Assistant Attorney General, Jones Law Firm, PLLC, Billings, Montana

        For Amicus Curiae:

                Neil G. Westesen, Dale Schowengerdt, Crowley Fleck PLLP, Helena, Montana

                Mark Taylor, Jessie Luther, Taylor Luther Group PLLC, Helena, Montana

Submitted on Briefs:  March 1, 2022

Decided:  March 15, 2022

Filed:

_____
Clerk

2

Chief Justice Mike McGrath delivered the Opinion and Order of the Court.

¶1 Petitioners are proponents of a potential ballot initiative, I-24, to be put to a state-wide vote during the November 2022 elections. Such initiatives undergo a statutory process of review and approval to secure their validity prior to collecting signatures that would qualify them for placement on the ballot. *See* §§ 13-27-301 to -317, MCA. One aspect of that process involves a review by the Attorney General of the proposed ballot issue to determine its "legal sufficiency" and to approve its language. Section 13-27-312, MCA. For I-24, the Attorney General both revised the proposed ballot statement and rejected the measure based on a finding of legal deficiency. Petitioners have filed an original action in this Court to seek review of the Attorney General's determinations, as permitted by § 13-27-316, MCA. We have issued a separate Order concerning the initiative's ballot language. This Opinion and Order addresses the following issues:

> *Issue One: Did Petitioners timely file their challenge?*
>
> *Issue Two: Was the Attorney General's determination of I-24's legal deficiency correct?*
>
> *Issue Three: Was the Attorney General's fiscal impact statement inadequate?*

¶2 We hold that Petitioners' challenge was timely and that the Attorney General wrongly rejected the proposed ballot initiative in his sufficiency review. We decline to address the fiscal impact statement as the issue is not properly before this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Article III, Section 4, of the Montana Constitution guarantees the public the right to "enact laws by initiative." In addition to minor limitations on the content of such

3

initiatives, this constitutional provision describes factors that will qualify an initiative petition for passage, and it requires petitions to be filed with the Secretary of State well in advance of an election. To facilitate this process, the Montana Legislature has enacted a series of statutes that govern the form of initiatives and the procedures for ensuring their validity prior to signature collection. *See* Title 13, chapter 27, MCA.

¶4 The process that initiative proponents must follow to qualify their petition for placement on the ballot involves first submitting the proposed text to the Secretary of State, who then passes the text on to the Legislative Services Division. Section 13-27-202(1), MCA. Staff at the Legislative Services Division will review the text for clarity and for conformity with bill drafting requirements and sections of law governing the form of initiatives. Section 13-27-202(2), MCA. The Legislative Services Division then communicates with the proponents of the initiative about any recommended revisions. Section 13-27-202(2)(b)-(c), MCA. As long as the proponents do not add material or substantively change any of the language from the Legislative Services Division, the Secretary of State then accepts the petition. Section 13-27-202(4), MCA.

¶5 The next step is a screening by the Attorney General. The Secretary of State sends a copy of the proposed ballot issue to the Attorney General for a "determination as to the legal sufficiency of the issue and for approval of the petitioner's ballot statements." Section 13-27-202(4), MCA. Only following the Attorney General's approval may the Secretary of State pass along to the proponents a valid petition to circulate and gather sufficient signatures to qualify for the ballot. If the Attorney General rejects the petition on legal sufficiency grounds, the measure will not be placed on the ballot unless

4

resubmitted pursuant to the constitutional and statutory requirements. *See* §§ 13-27-202(4), -202(5)(f), -312(10)(c), MCA.

¶6 The 2021 Montana Legislature added new components to the law covering the Attorney General's screening process. For example, one new provision tasks the Attorney General with reviewing the proposed ballot issue as to whether it "could cause a regulatory taking under Montana law or otherwise will likely cause significant material harm to one or more business interests in Montana if approved by the voters." Section 13-27-312(9), MCA. If the Attorney General is of the opinion that either of these things are true, then a statement to that effect is appended to the petition as a sort of "warning label."

¶7 Another change the 2021 Legislature made regards the definition of "legal sufficiency." The previous version of the law defined legal sufficiency only in terms of compliance with constitutional and statutory provisions governing how a proposed issue is submitted to electors, and the law made explicit that sufficiency did not include substantive legality. *See* § 13-27-312(7), MCA (2011). The 2021 Legislature reversed the latter standard, and the law now defines "legal sufficiency" to include "the substantive legality of the proposed issue if approved by the voters." Section 13-27-312(8), MCA; 2021 Mont. Laws ch. 554, § 6.

¶8 Section 13-27-316, MCA, permits proponents of a ballot issue to appeal to this Court to review the Attorney General's action under § 13-27-312, MCA. To do so, they must file an original proceeding within 10 days of the Attorney General's determination. Section 13-27-316(1), MCA. This Court must resolve the matter with haste. Section 13-27-316(3)(c)(i), MCA; Mont. Const. art, IV, § 7(2).

5

¶9 Here, Petitioners are proponents of a ballot initiative, I-24, that would designate sections of the Gallatin and Madison Rivers "Outstanding Resource Waters" under §§ 75-5-315 and -316, MCA. Such waters receive special statutory protection from water quality degradation. Petitioners previously requested that the Board of Environmental Review make such a designation on these rivers, following the appropriate statutory and regulatory steps. The Board declined. Now, they seek to put the matter to a vote through the ballot initiative process. I-24 would also make one change to the Outstanding Resource Waters statute. Section 75-5-316(2)(b), MCA, prohibits the Department of Environmental Quality from issuing new or increased point source discharge permits that would "result in a permanent change in the water quality of an outstanding resource water." I-24, if approved, would modify that language to include temporary adverse water quality changes.

¶10 Petitioners followed the process described above. They submitted their proposed measure to the Secretary of State, who sent it to the Legislative Services Division. Staff at Legislative Services suggested language for the initiative, which Petitioners accepted. The Secretary of State then sent the measure to the Attorney General for review.

¶11 On January 28, 2021, the Attorney General sent the Secretary of State his determination on I-24. The Attorney General had modified the language of the proposed ballot statement, taking the position that the version submitted was not sufficiently clear. Furthermore, the Attorney General rejected I-24 on legal sufficiency grounds, using the novel "substantive legality" standard in § 13-27-312(8), MCA. The Attorney General explained in his determination that I-24 was legally deficient because it would constitute an unconstitutional taking of private property in violation of the takings clauses in the

6

United States Constitution and in Article II, Section 29, of the Montana Constitution. Finally, the Attorney General also discussed his opinion on the "regulatory taking" question and his views on I-24's impact on Montana business interests, determining that the statement permitted by § 13-27-312(9), MCA, should be included if the measure proceeded to the ballot.

¶12 Petitioners received notice of the Attorney General's action from the Secretary of State on January 31, 2021, and on February 10, they filed an original proceeding in this Court challenging the Attorney General's determinations.

## DISCUSSION

¶13 *Issue One: Did Petitioners timely file their challenge?*

¶14 The Attorney General argues that Petitioners failed to file their challenge in this Court within the 10-day time period required by § 13-27-316(1), MCA. That statute uses the language "within 10 days of the attorney general's determination." Because the Attorney General gave his determination to the Secretary of State on January 28 (a Friday), he argues that Petitioners had only through February 7 to file their petition here.

¶15 The Secretary of State did not communicate the Attorney General's determination to Petitioners until January 31 (the following Monday). Petitioners contend that they had 10 days from January 31, the date they received notice, to file their petition, which renders this filing timely.

¶16 Implicit in the statute's 10-day triggering event is notice of the Attorney General's determination to Petitioners. Another part of the statute, § 13-27-202(4), MCA, explicitly tasks the Secretary of State with sending written notice of the Attorney General's

7

determination to the person who submitted the proposed ballot initiative. The only reasonable way to apply this provision and § 13-27-316(1), MCA, together is to conclude that the 10-day period commences when the Secretary of State sends the notice. Otherwise, any manner of delays—such as the transmittal between departments and a weekend, as here, or other paperwork or inter-governmental communication roadblocks—could effectively deprive potential claimants of an entire statutory timeline without their knowing. *See, e.g., Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 15, 300 Mont. 16, 3 P.3d 603 (discussing the importance of notice as an element of due process whenever legally protected interests are affected); *see also* M. R. Civ. P. 6(b) (permitting courts with ongoing jurisdiction to extend time for good cause); *Northwest Truck & Trailer Sales v. Dvorak*, 265 Mont. 327, 877 P.2d 31 (1994) (affirming a district court's extension for good cause based in part on late notice). Thus, we conclude Petitioners' filing of the original proceeding in this case is timely.

¶17 *Issue Two: Was the Attorney General's determination of I-24's legal deficiency correct?*

¶18 The Attorney General relied on a 2006 report from the Board of Environmental Review when he determined that I-24 was legally deficient. According to the Attorney General, the ballot measure would be insufficient because it "unquestionably causes a regulatory taking by depriving affected property owners all productive or economically beneficial use of their land" and "imposes an uncompensated taking in violation of the Montana and United States Constitution[s]." There are two critical problems with the Attorney General's approach, however. First, it misapprehends and misapplies the law that

8

applies to unconstitutional takings, and second, the approach contradicts the statutory scheme creating the Attorney General's review process.

¶19 Under the United States Constitution, private property may not "be taken for public use without just compensation." U.S. Const. amend V. And the Montana Constitution provides a similar constraint: "Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss." Mont. Const. art. II, § 29. Two different types of governmental action can generally rise to a taking. The first is "permanent physical invasion" of property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538, 125 S. Ct. 2074, 2081 (2005) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S. Ct. 3164 (1982)). The second is regulatory action that causes a property owner to "sacrifice all economically beneficial uses in the name of the common good" or to leave the property "economically idle." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 2895 (1992). When addressing either scenario, courts must undertake a fact-intensive inquiry to analyze whether the plaintiff owned a "compensable property interest" and whether the "governmental action at issue constituted a taking" of that property interest. *Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 2008 MT 460, ¶ 32, 348 Mont. 80, 201 P.3d 8 (citations omitted).

¶20 A crucial piece of the constitutional takings clauses is the phrase "just compensation." A government taking of property is not in and of itself unconstitutional; it must simply be compensated. The remedy for a taking is not nullification of the statute authorizing the government's action. Rather, the remedy for a property owner who challenges such action may be "just compensation." *See Lingle*, 544 U.S. at 538, 125 S. Ct.

9

at 2081; *Lucas*, 505 U.S. at 1030, 112 S. Ct. at 2901 (explaining that if a regulation completely proscribes "all economically productive or beneficial uses of land," compensation must be paid "to sustain it"—the regulation itself remains constitutional). An uncompensated taking is unconstitutional, but the statutory or regulatory laws underpinning it are not.

¶21 Here, the Attorney General rested his determination on his opinion that I-24 would likely result in a "categorical taking" of private property that must be compensated. He explained that in order to be valid, the measure would need to "provide for a mechanism to provide compensation to comply with the constitution," and he said that because it did not, I-24 was deficient. But the Attorney General provided no authority for this proposition, and as a matter of takings law, it is incorrect. A person who claims his or her property has been taken or damaged by the government can commence litigation to recover compensation, which will depend on a fact-intensive inquiry as noted above. *See* Mont. Const. art. II, § 29. Nothing in I-24's language impairs a person's ability to seek full compensation. There is no constitutional need for I-24 itself to contain a mechanism for compensation because the mechanism already exists. *See Kafka*, ¶ 9; *Buhmann v. State*, 2008 MT 465, ¶ 10, 348 Mont. 205, 201 P.3d 70. Thus, the Attorney General's conclusion that I-24 was legally deficient based on a constitutional infirmity was incorrect and must be reversed.

¶22 Furthermore, the statutes governing the Attorney General's review make clear the impropriety of using an opinion about regulatory takings to determine a ballot issue is insufficient. Section 13-27-312(9), MCA, provides an alternate step in the process for the

10

Attorney General to raise such concerns. This provision calls on the Attorney General to review a proposed ballot issue for its potential to cause a regulatory taking or harm business interests, and if the Attorney General thinks it will, he can notify the Secretary of State, who then places an advisory statement on the petition's final form. *See* § 13-27-204(2), -312(9), MCA. The Attorney General's determination on I-24 included such a finding and directive to the Secretary of State. It would not make sense for the law to call for an advisory statement (which would be appended to a valid petition) to be warranted for a reason that would also render the petition invalid.

¶23 For these reasons, we conclude that the Attorney General's legal sufficiency determination was incorrect. We conclude that the I-24 petition is legally sufficient, and the Secretary of State must forward the petition to the proponents—with relevant language such as the advisory statement included—to proceed with the signature-gathering process.

¶24 *Issue Three: Was the Attorney General's fiscal impact statement inadequate?*

¶25 Amici have raised an argument regarding the substance of the fiscal impact statement that was part of the Attorney General's review under § 13-27-312, MCA. One element of the Attorney General's process involves generating an opinion about a proposed initiative's effect on state "revenue, expenditures, or fiscal liability." Section 13-27-312(3), MCA. Amici contend that the Attorney General's determination on I-24 should have better assessed revenue impacts. We note only that we will not address this issue as it is not properly before this Court.

¶26 Just as § 13-27-316, MCA, gives Petitioners, or proponents of a ballot issue, the right to appeal the Attorney General's determination to this Court for review, the law also

11

provides an opportunity for opponents to do so. *See* § 13-27-316(2), MCA. And just as Petitioners were required to do, opponents seeking reversal or alteration of the Attorney General's determination must file an original proceeding in this Court within 10 days. Amici organizations did not do so here. Thus, their involvement in this case is confined to argument on the issues raised by the parties themselves. We have previously made clear that, with the exception of rare instances with important weight, "amici curiae cannot raise separate issues not raised by the parties." *Reichert v. State*, 2012 MT 111, ¶ 25, 365 Mont. 92, 278 P.3d 455. This case is unlike any of those exceptional circumstances, and the amici were well involved in the Attorney General's review process and had the ability to challenge the fiscal statement independently but did not. We therefore will not consider their additional argument which is external to the present dispute.

## ORDER

¶27 IT IS ORDERED that Petitioners' request to overrule the Attorney General's legal-sufficiency determination is GRANTED. The Attorney General's rejection of I-94 is vacated, and the Secretary of State is directed to return the proposal to Petitioners for the purpose of gathering signatures.

The Clerk is directed to provide notice of this Opinion and Order to all counsel of record and the Montana Secretary of State.

DATED this 15th day of March, 2022.

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

12

/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Chief Justice Mike McGrath, concurring.

¶28 I write separately to address a crucial constitutional issue implicated in this case that the parties failed to acknowledge or discuss in their briefing. Although we have determined on the record here that the Attorney General's conclusions were incorrect as a matter of law—resolving this specific case—it is important to clarify that even if the Attorney General's grasp of the constitutional doctrine were correct, he lacks the power to reject a proposed ballot initiative based on an opinion about its constitutionality. Under our constitutional structure and separation of powers, only the courts may make determinations about a law's constitutionality.

¶29 In previous pre-election litigation regarding ballot initiatives, we have held that it is only appropriate to forestall a valid initiative prior to an election when it is "unquestionably and palpably unconstitutional on its face." *Reichert*, ¶ 59 (quoting *State ex rel. Steen v. Murray*, 144 Mont. 61, 69, 394 P.2d 761, 765 (1964)). Furthermore, we have expressed emphatically that although this Court may take such action, we should hesitate to "interfere with the constitutional right of the people of Montana to make and amend our laws through the initiative process." *State ex rel. Mont. Citizens for Pres. of Citizens' Rights v. Waltermire*, 224 Mont. 273, 278, 729 P.2d 1283, 1286 (1986). We generally refrain from impeding an initiative's ballot access on constitutional grounds because no potential constitutional conflict would exist "until and unless the Initiative was enacted into law by

13

popular vote." *State ex rel. Mont. Sch. Bd. v. Waltermire*, 224 Mont. 296, 301, 729 P.2d 1297, 1300 (1986); *Montanans Opposed to I-166 v. Bullock*, 2012 Mont. 168, ¶ 14, 365 Mont. 520, 285 P.3d 435.

¶30   Although the Attorney General rooted his determination in our facial unconstitutionality standard, what the Attorney General failed to recognize is that *Reichert* and other cases establishing this standard addressed the propriety of action by *the courts* to affect proposed initiatives.  *See Reichert*, ¶ 59 (citing *Cobb v. State*, 278 Mont. 307, 310, 924 P.2d 268, 269 (1996) ("*judicial intervention . . .* is not encouraged") (emphasis added). The reason we have always addressed such issues in that frame is because "the office of interpreting legislative and constitutional provisions lies exclusively in the courts." *State v. Toomey*, 135 Mont. 35, 44, 335 P.2d 1051, 1056 (1958).

¶31   Recognition of that long-standing constitutional structure is likely why the Legislature, in its enactment of the Attorney General's screening process, limited the concept of "legal sufficiency" to validity regarding format and procedure, rather than an initiative's substantive legality.  Because Article III, Section 4, of the Montana Constitution ensures the public's right to "*enact laws* by initiative" (emphasis added), it is unclear what the Legislature contemplated when it reversed the provision to review the "substantive legality" of a *new enactment of law.*  What is clear, however, is that the Attorney General took this directive to mean that he could determine a proposed ballot issue's validity based on his view of its constitutionality.

¶32   But the Attorney General lacks such power, and the Legislature equally lacks the power to confer it upon him.  The Montana Constitution "vests in the courts the exclusive

14

power to construe and interpret legislative Acts, as well as provisions of the Constitution." *State ex rel. Du Fresne v. Leslie*, 100 Mont. 449, 454-55, 50 P.2d 959, 962 (1935). "[I]nherent in that power is the responsibility to determine whether a law conforms to the Constitution." *State v. Walker*, 2001 MT 170, ¶ 7, 306 Mont. 159, 30 P.3d 1099. "Within constitutional limits, this Court and its subordinate courts have the exclusive authority and duty to adjudicate the nature, meaning, and extent of applicable constitutional, statutory, and common law[.]" *Larson v. State*, 2019 MT 28, ¶ 42, 394 Mont. 167, 434 P.3d 241.

¶33    This exclusive duty is inherent in the separation of powers enshrined in Article III, Section 1, of the Montana Constitution, and it is deep-rooted in the American constitutional tradition. *See, e.g., Mills v. Porter*, 69 Mont. 325, 328, 222 P. 428, 429-30 (1924) (noting that the three branches of government are assigned different "powers which they may not transgress" and citing the foundational federal case of *Marbury v. Madison*, 5 U.S. 137, (1 Cranch) 137 (1803)). Nearly a century ago, for example, we recognized this constitutional division and the courts' exclusive interpretive power as among a number of "well-established rules," and we stressed that "the soundness of these provisions of law . . . will not, we think, be questioned." *See Leslie*, 100 Mont. at 454-55.

¶34    Indeed, we have even previously covered this separation-of-powers issue in the very same context as here. In 2014, opponents of a proposed ballot initiative argued that the Attorney General should have rejected it based on its alleged unconstitutionality. *See Hoffman v. State*, 2014 MT 90, ¶ 4, 374 Mont. 405, 328 P.3d 604. We noted that "[a]s an executive officer of the State of Montana, the Attorney General does not have the authority to make a declaration regarding the constitutionality of [the initiative].

15

'Constitutional questions are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers.'" *Hoffman*, ¶ 9 (quoting *Mitchell v. Town of W. Yellowstone*, 235 Mont. 104, 109, 765 P.2d 745, 748 (1988)).

¶35 Now, although the Legislature reversed the provision in § 13-27-312(8), MCA, to include "substantive legality," the new law cannot be construed to have granted the Attorney General extraconstitutional authority. "The Legislature is presumed to be aware of all of its enactments, as well as all related constitutional duties and limitations." *Clark Fork Coalition v. Mont. Dep't of Natural Res. & Conservation*, 2021 MT 44, ¶ 60, 403 Mont. 225, 481 P.3d 198 (citations omitted). Note, for example, that § 13-27-316(6), MCA, protects the public's right to judicially challenge "a constitutional defect in the substance of an issue approved by a vote of the people." This provision within the same statutory framework as the Attorney General's review demonstrates the Legislature's awareness that the Attorney General's screening step is not the proper forum for constitutional challenge.

¶36 Because only the judicial branch is vested with the constitutional authority to determine whether a legal enactment and the constitution conflict, it is beyond the power of the Attorney General to foreclose the public's right to pursue the Article III, Section 4 initiative process on such grounds. Any future determination by the Attorney General that bases legal deficiency on a matter of constitutional interpretation cannot stand.

/S/ MIKE McGRATH

Justice Dirk M. Sandefur joins the Concurrence of Chief Justice Mike McGrath.

/S/ DIRK M. SANDEFUR